UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
EKATERINA RAPAY,                       :          16cv4910(DLC)
                         Plaintiff,    :
                                       :          OPINION AND ORDER
          -v-                          :
                                       :
MICHAEL CHERNOV, GELSEY KIRKLAND,      :
GELSEY KIRKLAND ACADEMY OF CLASSICAL   :
BALLET INC., ANDRE TCHELISTCHEFF, NILAY:
SHAH, LEAH CAMPBELL, HARRIET TAMEN,    :
KATHERINE REILAND, and GABRIEL         :
BHARATLALL,                            :
                                       :
                         Defendants.   :
-------------------------------------- X

APPEARANCES:

For the Plaintiff:
Claudius O. Sokenu
James Lee
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

For the Defendants:
Jeffrey M. Eilender
Vitali S. Rosenfeld
Schlam Stone & Dolan LLP
26 Broadway
New York, New York 10004

DENISE COTE, District Judge:

     Plaintiff Ekaterina Rapay ("Rapay"), a Russian citizen,

brings this action premised on diversity jurisdiction against

the defendants Michael Chernov ("Chernov"), Gelsey Kirkland

("Kirkland") and their company, the Gelsey Kirkland Academy of

Classical Ballet Inc. ("GKA") for breach of contract, fraud,

<u>quantum meruit</u>, unjust enrichment, and promissory estoppel.  The
defendants have moved to dismiss the First Amended Complaint
("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).  The
defendants also move to strike the request for punitive damages
and attorneys' fees from the pleadings pursuant to Fed. R. Civ.
P. 12(f).  For the reasons set forth below, the defendants'
motion to strike is granted, and the motion to dismiss is
granted in part.

**<u>BACKGROUND</u>**

The following facts are drawn from the FAC and are
construed in favor of the plaintiff.  <u>See</u> <u>Keiler v. Harlequin</u>
<u>Enters. Ltd.</u>, 751 F.3d 64, 68 (2d Cir. 2014).

Rapay is a professional ballet costume designer.  Chernov
and his wife Kirkland are the founders of GKA, a New York dance
education center.  In December 2011, Chernov and Kirkland orally
offered to employ Rapay as a costume and set designer for GKA's
upcoming production of "The Nutcracker" at a "reasonable rate"
and reimburse all her expenses.  There was no written contract.

Rapay began working for GKA in January 2012, but the
parties continued to negotiate the terms and scope of her
employment through April 2012.  According to Rapay, GKA agreed
that she would design costumes and sets for "The Nutcracker" and
other productions in exchange for compensation at "a rate

commensurate with her experience."  Rapay claims such compensation would range from $50,000 to $75,000 per year.

Throughout 2012 and 2013, Rapay provided at least 51 separate costume design sketches and traveled on three separate occasions to GKA's offices in New York to oversee costume design and construction.  During Rapay's first trip to New York in April 2012, Chernov took her to the law offices of Frenkel Hershkowitz & Safran LLP ("Frenkel") to help her obtain a work permit.  A Frenkel representative described the documents required to obtain an "O-1" work visa, which is a nonimmigrant visa for certain individuals in the arts and other fields. Chernov informed Rapay that once she assembled the required documents, he would provide the employment information necessary to complete her O-1 visa application.

In March 2013, during her final visit to New York, Rapay informed Chernov that she had compiled the necessary documents. Accordingly, on March 13, 2013, Chernov's assistant sent Rapay an email containing specific instructions on how to complete the O-1 visa application (the "March 2013 email").  The March 2013 email stated that Rapay would be employed as a full-time "Costume Designer," whose job included "designing, sewing and creating various costumes for [GKA's] upcoming Nutcracker" production for "$25,000."

3

Rapay contacted Chernov and demanded that he pay her $50,000, not $25,000.  Chernov provided Rapay a "small payment" and, according to the FAC, assured her "that the rest of her compensation would be forthcoming and that they would sign a written contract" on a subsequent visit in the fall of 2013.

On June 17, 2013, Chernov sent Rapay an email terminating her employment (the "June 2013 email").  In the email, Chernov wrote "I need to clarify for you the reality of GKA's situation in moving forward," and explained that GKA would not be using Rapay's designs "except for Arabian girls and Russian lead girl for which [GKA] will credit you of course."  He added that Rapay's designs "for the most part did not fall in with [GKA's] vision" and that "[t]his also means [GKA] will not be able to process your work visa application."  Chernov noted that he was "sure that this will impact our friendship."

GKA's production of "The Nutcracker" commenced in December 2013.  According to Rapay, videos of the performance reveal that GKA used not only the costumes for the Arabian girls and the Russian lead girl, but also various other costumes designed by Rapay.  Rapay sent Chernov a demand letter on January 31, 2014 seeking payment for her work for GKA.  Chernov never responded.

Rapay filed a complaint on June 24, 2016, seeking to recover her unpaid compensation under several contract and

4

quasi-contract theories of liability, including breach of contract, <u>quantum meruit</u>, unjust enrichment, and promissory estoppel, as well as fraud.  An amended complaint was filed on August 2, 2016.  The defendants filed the present motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(1) on August 17. The motion became fully submitted on November 16.

## DISCUSSION

When deciding a motion to dismiss, a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  <u>LaFaro v. N.Y. Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  <u>Keiler</u>, 751 F.3d at 68.  A claim has facial plausibility when "the factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Tongue v. Sanofi</u>, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

## I. Individual Liability of Chernov and Kirkland

Chernov and Kirkland contend that the contract and quasi-contract claims alleged against them in their personal capacities must be dismissed because the FAC does not allege any

5

personal wrongdoing by either Chernov or Kirkland.  It is well-established under New York law that "[p]ersons may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts."  Stern v. H. DiMarzo, Inc., 909 N.Y.S.2d 480, 480-81 (App. Div. 2010) (citation omitted).  Put differently, "[w]hen an officer or director acts on behalf of his or her corporation, he or she may not be held liable for inducing the corporation to violate its contractual obligations unless his or her activity involves separate tortious conduct or results in personal profit."  Id. at 481 (citation omitted).

The FAC does not include facts suggesting that Chernov and Kirkland engaged in tortious conduct or intended to bind themselves individually under the contract.[1]  Accordingly, the breach of contract and quasi-contract claims against Chernov and Kirkland are dismissed.

Rapay argues that Chernov and Kirkland benefitted personally from GKA's production of "The Nutcracker" through the advancement of their careers and receipt of salary and benefits from GKA.  This is insufficient to support a claim against these

---

[1] The plaintiff does not seek to pierce the corporate veil and the FAC does not allege facts sufficient to do so.  See MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001).

individuals due to the alleged breach by their employer of its contract with Rapay.

## II. Breach of Contract

The defendants argue that the alleged contract is unenforceable for two reasons.  First, the defendants contend that it violates New York's statute of frauds because the oral contract was never reduced to writing even though Rapay's employment extended beyond one year.  Second, the defendants allege that the contract is unenforceable for lack of definiteness.

### A. Statute of Frauds

New York's statute of frauds renders void an agreement that has not been reduced to writing if "[b]y its terms [it] is not to be performed within one year from the making thereof."  N.Y. Gen. Obl. Law § 5-701(a)(1).  "New York courts generally construe the statute of frauds narrowly, voiding only those oral contracts which by their very terms have absolutely no possibility in fact and law of full performance within one year."  Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 110 (2d Cir. 2014) (citing D&N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 454 (1984)).  "[W]herever an agreement has been found to be susceptible of fulfillment within that time, in whatever manner and however impractical, the New

7

York Court of Appeals has held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred." Id. (citation omitted).

New York law presumes that an employment agreement that lacks a fixed duration is a "hiring at will, terminable at any time by either party." Id. (citation omitted). Such agreements are "not covered by the statute of frauds, because they could theoretically be terminated by either party within one year of their making." Id.

The alleged oral agreement between Rapay and GKA is not void under the statute of frauds. Nothing in the alleged contract required that Rapay's employment extend beyond a year. She was not required, for example, to continue working for GKA up to and until the production of "The Nutcracker." She was required to design costumes and sets -- a service which could theoretically have been completed within the course of a year and in advance of the ballet performances.

GKA contends that the parties contemplated that the work would occur over the course of the 23 months preceding "The Nutcracker" performance. Even if this were the parties' expectation, that is insufficient to void a contract. It remained possible that Rapay's work could be fully performed within a year or that her employment would be terminated.

## B. Sufficiency of the Alleged Oral Contract

The defendants argue that Rapay's breach of contract claim should be dismissed because the alleged oral contract is too indefinite to be enforceable.  Specifically, the defendants contend that there was no meeting of the minds with respect to the commencement date, the duration, and the salary.

"Under New York law, a binding contract can be formed without the execution of a written agreement."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 171 (2d Cir. 2014).  Nonetheless, "the plaintiff must demonstrate that the terms of any agreement are definite."  Id.; see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981) ("[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.").

New York courts "ha[ve] not applied the definiteness doctrine rigidly."  166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 78 N.Y.2d 88, 91 (1991).  Instead, they apply a standard that is "necessarily flexible, varying for example with the subject of the agreement, its complexity, the purpose for which the contract was made, the circumstances under which it was made, and the relation of the parties."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 482-83

9

(1989).  Accordingly, "[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear."  Id. at 483.

### 1. Commencement Date and Duration

With respect to a start date, while some New York courts have held that the commencement date constitutes an "essential element[] of an effective employment contract," Elite Tech. NY Inc. v. Thomas, 894 N.Y.S.2d 420, 421 (App. Div. 2010) (citation omitted), failure to specify a start date does not automatically render a contract unenforceable.  So long as this term "can be rendered certain and complete, by reference to something certain, the court will fill in the gaps."  Metro-Goldwyn-Mayer v. Scheider, 40 N.Y.2d 1069, 1071 (1976) (citation omitted).  Similarly, although duration is considered an "essential term[] of an employment contract," Zaitsev v. Salomon Bros., Inc., 60 F.3d 1001, 1004 (2d Cir. 1995), "[t]he fact that [an] alleged oral agreement may not have contained a specified time for performance does not constitute a form of indefiniteness that would, at th[e] pleadings stage, warrant dismissal on that basis."  Held v. Kaufman, 91 N.Y.2d 425, 432 (1998).

The alleged agreement between Rapay and GKA is not too indefinite in terms of its commencement date or duration to be

unenforceable.  The agreement provided that Rapay was to perform her costume and set design work "in connection with a number of ballet productions, including 'The Nutcracker.'"  This is sufficiently definite to withstand a motion to dismiss.

**2. Price**

"As price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation."  Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd., 581 N.Y.S.2d 50, 51 (App. Div. 1992).  That said, the failure to fix a sum certain is not necessarily fatal to a contract.  Under New York law, a price term is

> not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula.  Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage.

Cobble Hill, 74 N.Y.2d at 483.

"A custom or usage, if it is to be read into a contract to ascertain the intention of the parties, must fix a definite standard by proof establishing that it was general, uniform and unvarying."  Belasco Theatre Corp. v. Jelin Prods., Inc., 59 N.Y.S.2d 42, 45 (App. Div. 1945).  In other words, "custom and

11

usage evidence must establish that the omitted term is 'fixed and invariable' in the industry in question." Hutner v. Greene, 734 F.2d 896, 900 (2d Cir. 1984) (citation omitted).  The custom must be "general and not personal, and known to the parties." Belasco, 59 N.Y.S.2d at 46.  In Belasco, for example, the court found a price term for theater bookings insufficiently definite where it merely established "a range with minimum and maximum figures within which the parties could negotiate."  Id. at 45.

Here, the FAC alleges that the defendants agreed to compensate Rapay "at a rate commensurate with her experience." The FAC further alleges that "Chernov, by virtue of his experience in the ballet industry and his extensive conversations with Rapay regarding her work, was aware of the value of Rapay's services and the market rate for such services."  Finally, the FAC states that GKA agreed to compensate Rapay "in the range of $50,000 to $75,000, a rate commensurate with her experience," and that "a designer of Rapay's experience and skills would typically receive a salary in excess of $50,000 per year."

These allegations are insufficient to allege a meeting of the minds with respect to price.  Like the indefinite price term in Belasco, Rapay's alleged price term merely establishes a range -- between $50,000 and $75,000 -- within which the parties

12

could negotiate.  Moreover, Rapay's alleged price term is not "fixed and invariable" within the ballet industry, as it necessarily turns on the experience and skills of the individual designer.  Thus, Rapay's contract claim must be dismissed due to the indefinite price term.

## III. <u>Quantum Meruit</u> and Unjust Enrichment

The defendants seek to dismiss Rapay's quasi-contract claims as inadequately plead.  A plaintiff may recover for unjust enrichment in New York after establishing "that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant."  <u>Bigio v. Coca-Cola Co.</u>, 675 F.3d 163, 176-77 (2d Cir. 2012) (citation omitted).  "The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182 (2011) (citation omitted).

Similarly, to recover in <u>quantum meruit</u> in New York, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."

Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009) (citation omitted).  Under New York law, quantum meruit and unjust enrichment may be jointly analyzed as a single quasi-contract claim.  Id. at 509 n.9.

Rapay's quasi-contract claims of unjust enrichment and quantum meruit against GKA are adequately pled.  The FAC alleges that Rapay agreed to design costumes and sets for GKA in exchange for compensation; that GKA utilized several of Rapay's costumes in its production of "The Nutcracker"; that Rapay was not paid adequately for her set and costume design services; and that Rapay expressed an expectation of compensation, as evidenced by her repeated inquiries to Chernov regarding the status of her payment.  Thus, Rapay's allegations are sufficient to support her quasi-contract claim under both a theory of unjust enrichment and quantum meruit.

## IV. Promissory Estoppel

The defendants move to dismiss the claim for promissory estoppel.  "To demonstrate promissory estoppel under New York law, a party must show reasonable and detrimental reliance upon a clear and unambiguous promise."  Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 816 (2d Cir. 2014).

Rapay's promissory estoppel claim against GKA is adequately pled.  The FAC alleges that Chernov, acting as a representative

14

of GKA, assured Rapay that she would be paid for her costume design work.  The FAC further alleges that Rapay reasonably relied upon Chernov's assurances when she expended substantial resources in designing sets and costumes for GKA, and was damaged when GKA did not pay her as promised.  Accordingly, the defendants' motion to dismiss the promissory estoppel claim against GKA is denied.

To the extent, however, that the plaintiff seeks to bring this claim against the individual defendants, it is dismissed. The FAC describes an agreement by GKA to pay her for work to be performed for GKA.  There is no basis for a promissory estoppel claim against any other defendant.

The defendants argue that the promissory estoppel claim should be dismissed as duplicative.  They cite Celle v. Barclays Bank P.L.C., 851 N.Y.S.2d 500, 501 (App. Div. 2008), for the proposition that "[i]n the absence of a duty independent of an agreement, a promissory estoppel claim is duplicative of a breach of contract claim," even if the contract claim is found to be defective.  Celle is inapposite.  The court in Celle found that there was a valid contract between the parties that preempted the plaintiff's promissory estoppel claim.  Id.  Here, by contrast, there was no formal contract between Rapay and GKA; accordingly, the promissory estoppel claim is not duplicative.

15

**V. Fraud**

The defendants argue that Rapay's fraud claim should be dismissed as duplicative of her breach of contract claim and because it fails to satisfy the heightened pleading requirements set forth in Fed. R Civ. P. 9(b).

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 170 (2d Cir. 2015).  To withstand a Rule 12(b)(6) challenge in federal court, the plaintiff must "assert facts that plausibly support the inference of fraud."  Id. (citation omitted).

In conjunction with the facial plausibility standard for Rule 12(b)(6), a plaintiff must also satisfy the heightened pleading requirements set forth in Rule 9(b).[2]  To satisfy these requirements, the complaint must: (1) detail the events giving rise to the fraud, such as the statement or omission that is alleged to be fraudulent, the identity of the speaker, the

---

[2] Rule 9(b), Fed. R. Civ. P., provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

location of the fraud, and the reason the statement is
fraudulent; and (2) allege facts "that give rise to a strong
inference of fraudulent intent." <u>Loreley Fin. (Jersey) No. 3
Ltd.</u>, 797 F.3d at 171 (citation omitted).  An inference of
fraudulent intent is "strong" if it is "cogent and at least as
compelling as any opposing inference one could draw from the
facts alleged."  <u>Id.</u> at 177 (citation omitted).  In determining
whether this "strength-of-inference requirement" is met, courts
must "consider the complaint in its entirety and take into
account plausible opposing inferences."  <u>Id.</u> (citation omitted).
At the pleading stage, a fraud plaintiff may establish a "strong
inference" of scienter "by alleging facts that constitute strong
circumstantial evidence of conscious misbehavior or
recklessness."  <u>Id.</u> (citation omitted).

> [W]here a fraud claim arises out of the same facts as
> plaintiff's breach of contract claim, with the
> addition only of an allegation that defendant never
> intended to perform the precise promises spelled out
> in the contract between the parties, the fraud claim
> is redundant and plaintiff's sole remedy is for breach
> of contract.

<u>Telecom Int'l Am., Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 196 (2d
Cir. 2001) (citation omitted).  In other words, "simply dressing
up a breach of contract claim by further alleging that the
promisor had no intention, at the time of the contract's making,
to perform its obligations thereunder, is insufficient to state

an independent tort claim." Id. (citation omitted).  Thus, in order to state a claim for fraud under New York law that is separate from a breach of contract claim, a plaintiff must either:

> (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citation omitted).

The FAC fails to plead fraud with sufficient particularity to survive Rule 9(b)'s pleading requirements.  The FAC alleges that "[d]uring Rapay's employment, without intending to make good on his promise, Chernov repeatedly assured Rapay that she would be paid her wages for the work that she did for GKA." First, Rapay does not identify any fraudulent representations attributable to Kirkland; accordingly, the fraud claim against her must be dismissed.  As for Chernov, the facts asserted in the FAC fail to raise a strong inference of scienter.  The FAC fails to plead that the parties ever reached an agreement on how much GKA would pay Rapay.  Moreover, Rapay does not identify with sufficient specificity any alleged misrepresentation or specify where and when these allegedly fraudulent statements were made; just that they were made "repeatedly."  Accordingly,

18

Rapay's fraud claim is dismissed for failing to satisfy the heightened pleading requirements of Rule 9(b).

Rapay argues that under New York law, an employer's knowingly false promise to an employee, made during the duration of the employment and intended to induce that employee to abandon other employment opportunities, is actionable as fraud. This argument does not cure the failure to meet the Rule 9(b) pleading standard. Moreover, the cases Rapay cites are inapposite. Rogers v. Blacksmith Brands, Inc., 11cv1940, 2011 WL 6293764 (S.D.N.Y. Dec. 13, 2011), and Hyman v. International Business Machines Corp., 98cv1371, 2000 WL 1538161 (S.D.N.Y. Oct. 17, 2000) concern misrepresentations made prior to the commencement of an employment contract in order to induce the plaintiff to enter into a contract. See N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316 (1995) (recognizing that a party may be liable in tort "[w]here a party has fraudulently induced the plaintiff to enter into a contract"). The fraudulent misrepresentations in Rogers and Hyman were therefore collateral to the employment contract, and did not concern either party's obligations under a contract.

Here, by contrast, the fraudulent misrepresentations were allegedly about the very terms of the employment relationship. GKA's promise to pay Rapay amounts to nothing more than a party

indicating its intent to pay for work performed.  Such allegations are insufficient to support a claim of fraud under New York law.  Finally, the allegation that GKA owes Rapay more for her work than it has already paid her is addressed through the plaintiff's quasi-contract and promissory estoppel claims.

## VI. Statute of Limitations

The defendants assert that the entire complaint must be dismissed as time-barred.  New York law provides that "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202[3] requires the cause of action to be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued."  Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 528 (1999).  "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  Id. at 529.  Rapay is a noncitizen whose cause of action accrued while she was residing in St. Petersburg, Russia.  Accordingly, the

---

[3] Section 202 states:
    An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.
N.Y. C.P.L.R. § 202.

shorter of New York or Russia's statute of limitations governs her claims.

The New York statute of limitations for Rapay's claims against GKA for quantum meruit and promissory estoppel is six years.  See N.Y. C.P.L.R. § 213.[4]  The Russian statute of limitations varies based on what type of relationship Rapay had with GKA.  According to the defendants' expert, the Labor Code of the Russian Federation (the "Labor Code") applies when "there is no formal written employment agreement, but the relationship between the parties is deemed to be an employment relationship." The Labor Code provides for a three-month limitations period and is said to govern "[c]laims by an employee against an employer, including those for compensation such as unpaid salary," as well as "individual labor dispute[s]."  By contrast, the Civil Code of the Russian Federation (the "Civil Code") governs non-employment relationships that arise from "a contract for rendering services or performing works."  The limitations period for service contracts is three years, commencing on the date when a person discovers that his or her rights have been

---

[4] Section 213 provides that "an action upon a contractual obligation or liability, express or implied," must be commenced within six years.  N.Y. C.P.L.R. § 213(2).  See also IMS Eng'rs-Architects, P.C. v. State, 858 N.Y.S.2d 486, 489 n.2 (App. Div. 2008) (noting that six-year statute of limitations applies to causes of action in quasi-contract).

violated.

Rapay does not dispute the defense expert's credentials or the substance of his affidavit.  Rather, Rapay argues that her relationship with GKA constituted a service contract -- not an employment relationship -- as those terms are understood within the Russian Labor and Civil Codes.

While the FAC occasionally refers to Rapay's relationship with GKA as one of employment, the nature of the relationship between Rapay and GKA is more properly construed as a service contract between the entity and a consultant.  Accordingly, if the Russian statute of limitations applies, it imposes a three-year statute of limitations.

Next, the parties dispute the date upon which Rapay's cause of action accrued.  This lawsuit was filed on June 24, 2016. The limitations period under the Russian Civil Code commences on the date upon which a person discovers that her rights have been violated.

Rapay's claim is timely.  Until "The Nutcracker" was staged, Rapay could not have discovered the extent to which GKA would use her work and therefore the amount she believed she was owed.

The defendants contend that the limitations period began on June 17, 2013, when Chernov sent Rapay an email terminating her

employment.  But, Chernov's June 2013 email did not describe the extent to which GKA would rely on Rapay's work.  Rather, the email informed Rapay that GKA would be using at least some of Rapay's designs, "for which [GKA] w[ould] credit [Rapay] of course."  While the email also stated that GKA would "not be able to process [Rapay's] work visa application," it was not unreasonable for Rapay to believe that she would still receive appropriate compensation to the extent GKA chose to use her designs.

## VII. Punitive Damages and Attorneys' Fees

The plaintiff seeks to recover punitive damages as well as attorneys' fees and costs as an element of damages under her contract and quasi-contract claims.  The defendants' motion to strike these claims for relief is granted.

The standard for imposing punitive damages under New York law is "strict."  Marinaccio v. Town of Clarence, 20 N.Y.3d 506, 511 (2013).  "[P]unitive damages will be awarded only in exceptional cases," where the defendant's conduct manifests "spite or malice, or a fraudulent or evil motive . . . or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton."  Id. (citation omitted); see also Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 489 (2007) ("Punitive damages are permitted when the

defendant's wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such a wanton dishonesty as to imply a criminal indifference to civil obligations." (citation omitted)).

It is well-established under New York law that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." Rocanova v. Equitable Life Assurance Soc'y of the U.S., 83 N.Y.2d 603, 613 (1994).  Punitive damages are recoverable only "when the breach also involved a particularly egregious fraud that 'was aimed at the public generally.'"  TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005) (citation omitted).  Punitive damages are similarly unavailable for unjust enrichment and other quasi-contract claims.  See Rosenberg, Minc & Armstrong v. Mallilo & Grossman, 833 N.Y.S.2d 485, 486 (App. Div. 2007) (finding it proper to "decline[] to instruct the jury that punitive damages may be awarded for unjust enrichment" because "such a cause of action effects disgorgement without regard to moral culpability").

Under the American Rule, "attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."  U.S. Fid. & Guar. Co.

24

v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004)
(citation omitted).  New York follows the American Rule.  See
Mount Vernon City Sch. Dist. v. Nova Cas. Co., 19 N.Y.3d 28, 39
(2012).

**VIII. Subject Matter Jurisdiction**

The defendants also seek to dismiss the complaint for lack
of subject matter jurisdiction pursuant to Rule 12(b)(1) for the
plaintiff's failure to plead a claim for damages in excess of
$75,000.

> Determining the existence of subject matter
> jurisdiction is a threshold inquiry and a claim is
> properly dismissed for lack of subject matter
> jurisdiction under Rule 12(b)(1) when the district
> court lacks the statutory or constitutional power to
> adjudicate it.

Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.
2008) (citation omitted).

The party invoking the federal court's jurisdiction bears
the burden of showing a "reasonable probability" that the
threshold amount in controversy for diversity jurisdiction is
satisfied.  Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d
214, 221 (2d Cir. 2006) (citation omitted).  "This burden is
hardly onerous, however, for [courts] recognize a rebuttable
presumption that the face of the complaint is a good faith
representation of the actual amount in controversy."  Scherer v.
Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397

25

(2d Cir. 2003) (citation omitted).  "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold."  Id. (citation omitted).  If the right of recovery is uncertain, the doubt should be resolved in favor of the subjective good faith of the plaintiff.  Id. (citation omitted).

These is no dispute that jurisdiction based on diversity of citizenship exists in this case.  Defendant GKA is a New York company, while individual defendants Chernov and Kirkland are both United States citizens residing in New York.  The plaintiff is a Russian citizen residing in St. Petersburg.

With respect to the amount in controversy, Rapay alleges that a rate commensurate with her costume design experience would have been approximately $50,000 per year.  Because Rapay worked for GKA for a year and a half, she claims to be entitled to at least $75,000.  The defendants have not shown to a legal certainty that Rapay is not entitled to recover that amount or more.

## CONCLUSION

The motion to dismiss for lack of subject matter jurisdiction is denied.  The motion to dismiss all claims against the individual defendants, as well as the breach of

26

contract and fraud claims, is granted.  The motion to dismiss the quasi-contract claims of unjust enrichment, quantum meruit, and promissory estoppel claims against GKA is denied.  The motion to strike the request for punitive damages and attorneys' fees is granted.

Dated:    New York, New York
          March 6, 2017

                                    _____
                                    DENISE COTE
                          United States District Judge